# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GENNARO MARZOCCO**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**KUNVERSION, LLC.** and JOHN DOES 1-25<br><br>Defendant. | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1. Plaintiff Gennaro Marzocco ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant Kunversion LLC.'s ("Defendant" or "Kunversion") practice of sending automated telemarketing text messages to cellular telephones without prior express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2. On or about May 25, 2015 Plaintiff visited DLW Enterprises, Inc.'s (dba "Van Dyk Group"; hereinafter, "Van Dyk") real estate website[1] to browse homes for sale.

3. While browsing, Plaintiff received a popup asking him to input his email address and cellular telephone number to continue browsing, with the popup explicitly noting that the cellular telephone number was to be used as his password.

4. Shortly after entering his email address and cellular telephone number, Plaintiff received an automated text message to his cellular telephone containing an advertisement for the mobile application "Millions Mapped," a real estate application created and owned by Kunversion.

---

[1] http://www.vandykrealestate.com/, last accessed May 28, 2015.

Complaint Continues

5. While the text message came from the number associated with Van Dyk's real estate business, the automated text message response was actually sent by Kunversion as part of an application and software suite used by Van Dyk to power its real estate website.

6. Plaintiff did not provide express written consent to receive this Advertising Text Message[2] from Kunversion, as required by the TCPA.

7. Plaintiff did not provide express consent to receive any automated text message (advertising or not) from Kunversion, as he only provided his cellular telephone number for use as a password, as prompted.

8. Upon information and belief, Kunversion sends similar automated Advertising Text Messages on behalf of numerous other real estate companies nationwide.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Kunversion because it conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Kunversion conducts significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

---

[2] "Advertising Text Message" is defined as any text message containing a hyperlink or reference to Defendant Kunversion's "Millions Mapped" application, such as that shown in paragraph 55 of this Complaint.

2

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of New Jersey. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

12. Defendant Kunversion, LLC is and at all times mentioned herein was, a corporation duly organized under the laws of the State of Colorado with its headquarters in Pine, Colorado.

13. Defendant Kunversion, LLC, is and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

14. At all times relevant herein, Defendant Kunversion, LLC conducted business in the State of New Jersey.

15. John Does 1-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action.

## BACKGROUND

**I. The TCPA**

16. The TCPA was enacted to protect consumers from the invasion of privacy caused by "unrestricted telemarketing." Congress found that "[b]anning such automated or prerecorded telephone calls … except when the receiving party consents to receiving the call … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." 47 U.S.C. § 227 (Congressional Statement of Findings).

17. Accordingly, the TCPA makes it unlawful for any person "to make any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47

3

U.S.C. 227(b)(1)(A)(iii).

18. This prohibition encompasses both voice and text calls, including short message service (SMS) messages (commonly known as "text messages"). 18 FCC Rcd. 14014 at 14115, ¶ 165; *see also Gager v. Dell Fin. Servs., LLC.*, 727 F.3d 265, 269 (3d Cir. 2013).

19. An "automatic telephone dialing system" is defined as "equipment which has the capacity (A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1).

20. The Federal Communication Commission ("FCC") has emphasized that this definition "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 FCC Rcd. 15391 at 15392, n.5; *see also, e.g.*, 18 FCC Rcd. 14014 at 14092, ¶ 132 (concluding that predictive dialers fall within the statutory definition because of their "capacity to dial numbers without human intervention.").

21. In 2012, the FCC issued a rule requiring consent to be in writing "for all telephone calls using an automatic telephone dialing system…to deliver a telemarketing message to wireless numbers[.]" 27 FCC Rcd. 1830 at 1838, ¶ 20.

22. This rule went into effect on October 16, 2013. *Id.* at 1857, ¶ 66. The statute now reads:

> No person or entity may … [i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system … [to any telephone number assigned to a … cellular telephone service], other than a call made with the prior express written consent of the called party[.]

47 CFR § 64.1200(a)(2).

23. "Advertisement" is defined as "any material advertising the commercial

4

availability or quality of any property, goods, or services." 47 CFR § 64.1200(f)(1). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 CFR § 1200(f)(12).

24. "Prior express written consent" is defined as "an agreement, in writing, bearing the signature of the person called that clearly authorized the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system … and the telephone number to which the signatory authorized such advertisements or telemarketing messages to be delivered." 64 CFR § 1200(f)(8).

25. This writing must contain a "clear and conspicuous" disclosure informing the signatory that the execution of the agreement would authorize the seller to deliver to the signatory telemarketing calls using an automatic telephone dialing system. 64 CFR § 1200(f)(8)(i)(A).

26. Clear and conspicuous," in turn, means "a notice that would be apparent to a reasonable consumer, separate and distinguishable from the advertising copy or other disclosures." 64 CFR § 1200(f)(3).

27. The person cannot be required to sign the agreement "as a condition of purchasing any property, goods, or services." 64 CFR § 1200(f)(8)(i)(B).

28. If there is doubt as to consent, "the seller … bear[s] the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained." 27 FCC Rcd. 1830 at 1844, ¶ 33.

29. The TCPA provides for a private right of action and statutory damages of $500 per call or text for negligent violations of the TCPA, and $1,500 per call or text for knowing and/or willful violations of the TCPA. 47 U.S.C. § 227(b)(3).

30.     By automatically sending Advertising Text Messages to Plaintiff and Class members without their prior express written consent, Kunversion negligently, or knowingly and/or willfully, violated the TCPA, and Plaintiff and Class members are entitled to statutory damages.

## II.     Kunversion's Platform and Automated Advertising Text Messages

31.     Kunversion provides real estate agents and companies with a full suite of software and applications to with lead generation and customer relationship management ("CRM"). In Kunversion's own words, it provides "Real Estate Websites, IDX [Internet Data Exchange], Lead Generation, CRM, Mobile Apps, Live Chat & More."[3]

32.     According to one site, more than 1,000 sites currently use the Kunversion platform.[4]

33.     Among the services Kunversion provides is automated text messaging. According to Chief Technology Officer Justin Tracy, "the system … automatically sends texts and emails to leads on a user's behalf based on triggers like if a lead visits one house five times, checks out a just-listed home or hasn't been on the site in a while[.]"[5]

34.     To facilitate these text messaging (and other) features, Kunversion provides platform users with a unique "Kunversion Office Number" which forwards calls, accepts text messages for the purpose of replying with automated responses, and generally centralizes the platform user's phone number through one number that is integrated with the Kunversion platform.[6]

35.     The "Kunversion Office Number" and text messaging features are highly touted

---

[3] http://www.kunversion.com/corporate/xiara/, last accessed May 28, 2015.
[4] http://trends.builtwith.com/websitelist/Kunversion, last accessed May 28, 2015.
[5] http://www.inman.com/2013/05/21/crm-vets-back-in-the-game-with-kunversion/, last accessed May 28, 2015.
[6] https://kunversion.zendesk.com/hc/en-us/articles/203259009-Your-website-rotation-and-office-number-, last accessed May 28, 2015.

throughout Kunversion's support documentation. One page, titled "Text Leads, Sign Riders & QR Codes" favorably compares text messages to emails in terms of response rate, and goes on to explain a use case where an individual sends a text message to the "Kunversion Office Number" and Kunversion "responds with a text message that contains your contact info and a link to that[sic] listings details on your mobile app. If the lead replies to the text [Kunversion] send[s] them, you are notified[.]"[7]

36. Another page, titled "Be A Text Messaging Superstar," instructs users of its platform on certain "Superstar Techniques" for sending mass automated text messages.[8]

37. A third page, titled "Kunversion Text Messages" explains the various ways to send mass text messages, and notes, under a section titled "Automated Texts," that "[a]long with emails, Kunversion will sometimes text your leads automatically."[9]

38. A broad overview of the Kunversion platform is attached as **Exhibit A**.

39. In order to collect cellular telephone numbers to enable real estate companies and agents to take advantage of the automated text messaging features, Kunversion's platform requires individuals to register in order to view property details. As part of that registration process, Kunversion requires the user to enter a cellular telephone number.

40. However, rather than openly disclose the purposes for which this cellular telephone number will be used, Kunversion's system prompts users to enter their cellular telephone numbers to "be used as password." This is shown in the screenshot below:

---

[7] https://kunversion.zendesk.com/hc/en-us/articles/203258889-Text-Leads-Sign-Riders-QR-Codes, last accessed May 28, 2015
[8] https://kunversion.zendesk.com/hc/en-us/articles/203258999-Be-A-Text-Messaging-Superstar, last accessed May 28, 2015.
[9] https://kunversion.zendesk.com/hc/en-us/articles/203258919-Kunversion-Text-Messages, last accessed May 28, 2015.

7



41. When a user enters their cellular telephone number and presses the blue "Yes, Let Me In!" button, they instantly receive an automated Advertising Text Message from Kunversion through the platform user's "Kunversion Office Number" that tells the user to "Download our app" with a link to the download page for Kunversion's "Millions Mapped" real estate application.

42. Another way to register is by clicking the "Login" button in the top right of sites using Kunversion's "front end" (i.e. user facing) website. When an unregistered user clicks that link, a drop down menu appears stating "New & returning visitors please enter your information to login. (Privacy Policy)," and asks for the user's first name, last name, email, and cellular telephone.

43. A user registering through this method receives the same type of automated Advertising Text Message as described above.

44. These Advertising Text Message as defined herein constitute "advertising" and "telemarketing" under the TCPA.

45. These Advertising Text Messages as defined herein were sent using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential

Complaint Continues

number generator, and/or without human intervention.

46. The only mention of Kunversion's automated text messaging can be found in its standard privacy policy.[10] This privacy policy describes the type of information the site collects, what is done with the information, internal record keeping policies, cookie policies, link policies, and policies on a user's ability to control their personal information.

47. One of the paragraphs, captioned "For Everyone, Especially Our Canadian Friends," states that "If you wish to register on this website you are giving expressed[sic] consent for us to email, call and text message you."

48. Another paragraph, captioned "What we do with the information," states "You will be contacted by email, text, or phone using this information."

49. Such disclosures are neither conspicuous enough nor explicit enough to satisfy the "prior express written consent" requirements of the TCPA, even if there were any consent given in writing.

50. Accordingly, Kunversion's practice of sending automated Advertising Text Messages violates the TCPA.

## PLAINTIFF'S FACTUAL ALLEGATIONS

51. On or about May 25, 2015, Plaintiff visited Van Dyk's real estate website to search for a home.

52. Van Dyk's real estate website uses the aforementioned Kunversion software and application suite.

---

[10] For example, http://vandykrealestate.com/privacy.php, last accessed May 28, 2015.

9

Complaint Continues

53. While browsing, Plaintiff was greeted with the following pop-up prompt:



54. Plaintiff entered his email address and, understanding that his cellular telephone number was to be used only for his password, entered his cellular telephone number.

55. Within minutes of pressing "Yes, Let Me In!", Plaintiff received the following text message from 609-789-0707, Van Dyk's "Kunversion Office Number":

56. While this link appears to be specific to the Van Dyk real estate business, when

10

Complaint Continues

clicked, the link opens the user's device's application store to the standard download page for Kunversion's "Millions Mapped" real estate application.

57. Plaintiff did not provide express written consent to Defendant to send this Advertising Text Message to his cellular telephone using an automatic dialing system (or otherwise).

58. As a result, Plaintiff suffered actual damages as a result of the invasion of privacy, nuisance, and time spent reading and interacting with the unsolicited text advertisement, as well as in the form of data and device storage usage, and money spent on a text messaging plan.

59. Plaintiff is also entitled to statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and (C).

60. Upon information and belief, Plaintiff is one of thousands to receive this or similar unsolicited and automated text message solicitations from Defendant.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed class defined as:

> Plaintiff and all persons within the United States **1)** to whose cellular telephone was sent, since October 16, 2013 **2)** an Advertising Text Message **3)** from a number owned, operated, or controlled by Kunversion, LLC, **4)** through the use of an automatic telephone dialing system **5)** when said person had not provided prior express written consent to receive such messages.
>
> ("Class")

62. Excluded from this class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

11

Complaint Continues

63. The Class members for whose benefit this action are brought is so numerous that joinder of all members is impracticable.

64. The exact number and identities of the persons who fit within the class are ascertainable in that Defendant maintains written and electronically stored data showing:

    a. The time period(s) during which automated text messages advertising the "Millions Mapped" application were sent to registrants;

    b. Other mass text messages, if any, containing an advertisement for "Millions Mapped," sent en masse to registered users;

    c. The time period during which these messages were programmed to be sent;

    d. The number of times those text messages were sent; and

    e. The telephone number of each individual to whom a text message was sent.

65. The Class is comprised of thousands of individuals, if not more.

66. There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

    a. Whether the text messages constitute telemarketing under the TCPA;

    b. Whether Defendant used an automatic dialing system to send these text messages;

    c. Whether Defendant took adequate steps to acquire express written consent;

    d. Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and

    e. Whether Defendant should be enjoined from engaging in such conduct in the future.

67. Plaintiff is a member of the Class in that he received an unsolicited automated

Complaint Continues

telemarketing text from Defendant Kunversion through Van Dyk's "Kunversion Office Number" 609-789-0707, which is owned, operated, or controlled by Defendant Kunversion.

68. The claims of Plaintiff are typical of the Class members in that they arise from Defendant's uniform policies and automatic text messages, and are based on the same legal theories of all Class members.

69. Plaintiff and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as the text messages at issue took up space on putative Class members' devices, caused a nuisance to Class members, and invaded their privacy.

70. Plaintiff has no interest antagonistic to, or in conflict with, the Class.

71. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent himself and the Class.

72. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive and declaratory relief for the Class as a whole.

73. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

74. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

75. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
(On Behalf of Plaintiff and the Class)

76. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77. Kunversion made unauthorized Advertising Text Message calls to the cellular telephone numbers belonging to Plaintiff and the other members of the Class using equipment that had the capacity to store or product telephone numbers to be called, using a random or sequential number generator, and/or without human intervention.

78. These Advertising Text Messages were made without the prior express written consent of Plaintiff and the other members of the putative Class.

79. Kunversion has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Kunversion's unlawful conduct, Plaintiff and the members of the putative Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation.

80. Should the Court determine that Kunversion's conduct was willful and/or knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the putative Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gennaro Marzocco, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff Gennaro Marzocco as the representative of the Class, and appointing his counsel as Class Counsel;

B. An order declaring that Kunversion's actions, as set out above, violate 47 U.S.C. § 227;

Complaint Continues

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Kunversion from engaging in the wrongful and unlawful acts described herein;

D. An award of actual and statutory damages;

E. An award of reasonable attorneys' fees and costs; and

F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** June 2, 2015

s/Jeremy M. Glapion_____
Jeremy M. Glapion, Esq.
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive, Suite 102
Wall, NJ 07719
T: (732) 455-9737
F: (267) 737-0446
jmg@glapionlaw.com

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: June 2, 2015                             **THE GLAPION LAW FIRM**

                                                s/Jeremy M. Glapion_____
                                                Jeremy M. Glapion, Esq.